J-S22023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: W.S., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.A.S., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2045 MDA 2019 |

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00750

| IN RE: N.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.A.S., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2064 MDA 2019 |

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00751

| IN RE: T.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: W.A.S., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2084 MDA 2019 |

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00752

IN RE: F.S., A MINOR        :    IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :

APPEAL OF: W.A.S., SR., FATHER    :
                                          :
                                          :
                                          :
                                          :
                                          :
                                          :     No. 2085 MDA 2019

Appeal from the Decree Entered December 2, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00753

BEFORE:    OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:       **FILED: JUNE 22, 2020**

W.A.S., Sr., (Father) appeals from the decrees involuntarily terminating his parental rights to his four children, W.S., Jr., a male (born in November 2008), N.S., a female (born in November 2011), T.S., a male (born in January 2014), and F.S., a female (born in April 2015) (collectively, Children). In addition, Father's counsel (Counsel) seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. Super. 2009). Upon review, we grant Counsel's petition to withdraw and affirm the termination of Father's parental rights.

Lancaster County Children and Youth Service Agency (Agency) first became involved with this family in 2013, due to domestic violence in the

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

home and J.R.'s (Mother) struggle with depression. Orphans' Court Opinion, 11/21/19, at 2. The Agency created a safety plan and maintained an open file with this family until January 2016. *Id.*

On June 7, 2016, Mother voluntarily placed the Children in the Agency's custody due to her severe depression. *Id.* On June 8, 2016, the juvenile court placed the Children in the temporary custody of the Agency. The Agency placed W.S., Jr., and N.S. together in one foster home, and T.S. and F.S. together in a different foster home. *Id.* At the time of the subject proceeding, the Children remained in their respective foster homes, which "are potentially permanent placements for the Children." *Id.*

At the time Mother voluntarily placed the Children, Father was in prison for committing aggravated assault against Mother. *Id.* Father was sentenced to a term of incarceration of two to four years, which he served at State Correctional Institution - Retreat. *Id.* Father was released from prison on April 1, 2018.[1] *Id.* at 5.

The orphans' court adjudicated the Children dependent on June 20, 2016. *Id.* The Agency first established a permanency plan for Father in August of 2017, when he remained incarcerated, and it included the following objectives: remaining free from drugs, the misuse of alcohol, crime, and

---

[1] As best we can discern, Father was re-incarcerated for a parole violation from August 7, 2019 to August 22, 2019. N.T., 9/23/19, at 17.

domestic violence; improving parenting skills; and obtaining a home appropriate for the Children. *Id.* at 3.

Father attended a permanency review hearing in June 2018, after his release from prison. The orphans' court found Father in moderate compliance with the permanency plan insofar as he had "completed a mental health evaluation, was in domestic violence treatment, tested negative for substances, and was regularly visiting the Children." *Id.* at 5 (citation omitted). However, at a permanency review hearing in February 2019, the court found, "Father engaged in a violent conversation [with Mother] that involved some degree of physical abuse . . . ." *Id.* at 6 (citation omitted).

On April 1, 2019, the Agency filed a petition for the involuntary termination of Father's and Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on September 23, 2019, and October 28, 2019, during which Father and Mother were present and represented by separate counsel. Elizabeth A. Stineman, Esquire, the guardian *ad litem* (GAL), represented the best interests of the

Children. Pamela J. Breneman, Esquire, represented the legal interests of the older children, W.S., Jr., and N.S.[2,3]

The Agency presented the testimony of Heather Lutz, Father's probation and parole officer, and Kelsey Curcio, the Agency's caseworker. Father neither testified nor presented any evidence. The court admitted into evidence a bonding evaluation performed by Karen M. Jaskot, ACSW, LCSW, CAADC, dated August 6 and 13, 2019, with respect to the Children's bond, if any, with Father, Mother, and their respective foster parents. *See* N.T., 10/28/19, at 6. The parties stipulated that, if Ms. Jaskot testified, she would opine consistent with her report. *Id.* at 5-6.

By decrees dated November 21, 2019, and entered on December 2, 2019, the orphans' court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). On December 19, 2019,

---

[2] Pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome. *See In re T.S.*, 192 A.3d 1080 (Pa. 2018) (citing *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017)). The *T.S.* Court reaffirmed, "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-GAL representing the child's best interests can also fulfill the role of the attorney appointed per Section 2313(a) to represent the child's legal interests." *T.S.*, 192 A.3d at 1088 (citing *L.B.M.*, 161 A.3d at 184, 188-89, 191). In this case, the record does not indicate that a conflict existed between the legal and best interests of the younger children, T.S. and F.S.

[3] Legal counsel for W.S., Jr., and N.S. filed an appellee brief in support of the involuntary termination of Father's parental rights.

Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.[4] The orphans' court filed its Rule 1925(a) opinion on January 17, 2020.

On March 6, 2020, Counsel filed with this Court a petition to withdraw his representation and brief pursuant to **Anders** and **Santiago**. Initially, we review Counsel's request. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). This Court has "extended the **Anders** principles to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[4] Mother also timely appealed from the decrees involuntarily terminating her parental rights to the Children. We address Mother's appeal by separate memorandum.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following substantive requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Here, Counsel filed a petition to withdraw certifying that he had reviewed the case and determined that Father's appeal was frivolous. Counsel also filed a brief that includes a summary of the history and facts of the case, the issues raised by Father, the facts that arguably support the appeal, and Counsel's assessment of why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition a letter he sent to

- 7 -

Father pursuant to **Millisock**, **supra**. Therefore, Counsel complied with the requirements of **Anders** and **Santiago**.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*). Counsel's **Anders** brief raises the following issue:

> Whether the [orphans'] court erred in terminating [the] parental rights of Father where there was a history of past success and cooperation with the Agency after his release from incarceration, as factors that should have provided Father with additional time to remedy the condition for placement[?]

**Anders** brief at 1 (unpaginated).

Our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, governs the termination of parental rights and requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for

termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the record supports the decrees pursuant to Section 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* Further, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *Id.* at 337.

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

Instantly, the orphans' court found with respect to Section 2511(a)(2), as follows:

> Father was incarcerated at the time these dependency proceedings began and was incarcerated for roughly twenty-two of the thirty-nine months these Children were in placement. While Father is currently not in prison, his continued behaviors of missing probation meetings, using drugs, and [physically] gripping Mother confirms that his incapacity to care for the Children that was present on June 8, 2016, has not been remedied, nor is it likely to be remedied. Therefore, the [c]ourt is satisfied that the Agency proved by clear and convincing evidence that termination of Father's parental rights is warranted pursuant to Section 2511(a)(2).

Orphans' Court Opinion, 11/21/19, at 14. The testimonial evidence supports the court's findings.

Father's parole officer, Heather Lutz, testified that Father was under the supervision of Lancaster County Adult Probation and Parole for a felony he committed in 2013 involving criminal trespass. N.T., 9/23/19, at 5. Ms. Lutz testified that Father has not complied with the parole requirements to attend biweekly meetings with her, remain drug-free, complete all recommended domestic violence treatment services, have no contact with Mother, and to maintain an approved residential address. *Id.* at 6.

Specifically, Ms. Lutz testified that Father did not attend his meeting with her the week before the termination proceeding. *Id.* at 6-7. In addition, she testified that Father admitted to using marijuana on August 27, 2019. *Id.* at 7. With respect to domestic violence, Ms. Lutz explained that Father failed to complete an outpatient treatment program successfully. *Id.* at 7-8. Further, she testified that Father has not indicated that he is currently engaged in any outpatient treatment for domestic violence. *Id.* at 8. Moreover, Ms. Lutz has received reports that Father is having contact with Mother. *Id.* at 9. Finally, Ms. Lutz stated that she does not believe Father is living at his mother's address, which was the approved address at the time of his release from prison. *Id.* at 8. Ms. Lutz explained, "if [Father] continues to use illegal substances[,] in addition to not reporting his appropriate [residential] address, in addition to not reporting [to] me, there will most likely be a [bench warrant issued for Father's arrest for violating his parole]." *Id.* at 9.

Kelsey Curcio, the Agency permanency caseworker, testified that Father has admitted to his ongoing use of marijuana, and he tested positive for it on December 17, 2018, and April 11, 2019. *Id.* at 16. With respect to domestic violence, she testified that Father was incarcerated for a parole violation from August 7, 2019, to August 22, 2019. N.T., 9/23/19, at 17. Ms. Curcio explained that Father had ongoing contact with Mother and admitted to "gripping her up on a few occasions." *Id.* Further, like Ms. Lutz, she was unable to confirm Father's residential address. *Id.* at 18. Finally, Ms. Curcio testified that Father is granted visitation once per week with the Children. *Id.* Since June 27, 2019, Father had attended two out of a possible eight visits. *Id.*

Based on the foregoing, we discern no abuse of discretion by the orphans' court in concluding that Father's conduct warranted termination of his parental rights pursuant to Section 2511(a)(2). Father's repeated and continued incapacity, abuse, or refusal to comply with his parole requirements and permanency objectives has caused Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, the causes of Father's incapacity, abuse, or refusal cannot or will not be remedied.

Regarding Section 2511(b), this Court has emphasized:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).

Further, in considering the affection a child may have for his or her natural parent, this Court has stated:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

In addition, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their

foster parents." ***In re T.S.M.***, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id***. at 269. The ***T.S.M.*** Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id***.

In this case, the orphans' court ordered the above-described expert bonding evaluation performed by Ms. Jaskot, but Father refused to participate. Ms. Curcio testified that, on three occasions, Father was scheduled to participate in the evaluation, but he failed to attend each time. N.T., 9/23/19, at 21.

Upon review, there is no record evidence that the younger children, T.S. and F.S., have a parent-child bond with Father. The orphans' court found that a parent-child bond exists instead between T.S., F.S., and their foster parents. ***See*** Orphans' Court Opinion, 11/21/19, at 17. The bonding evaluation supports the court's finding. ***See*** Petitioner's Exhibit 3.

With respect to the older children, W.S., Jr., and N.S., the court found that a bond exists between them and Father; however, they desire to be adopted by their foster parents. ***See*** Orphans' Court Opinion, 11/21/19, at 17. The court explained:

> The two oldest children care deeply for both sets of parents, but overall expressed a desire for the three-year state of limbo to end and for them to be adopted. Within the Bonding Evaluation, Ms. Jaskot noted that all four children "have come to see their

resource homes, schools, neighborhoods and churches as part of their daily lives." (Bonding Evaluation, p. 39). While the oldest children desire to have a relationship with Mother and Father, it was apparent from their conversations with Ms. Jaskot that they are also concerned for the safety of their Mother. It should be noted, that[,] upon learning that Mother and Father were once again in a relationship, the eldest child responded by crying, which the evaluator interpreted as an expressed concern for his Mother[,] whom he loves. Children should not have to deal with concerns for the safety of their Mother at the hands of their Father, nor would this [c]ourt allow the Children to return . . . to the parents who do not know how to maintain relational boundaries or sobriety for the safety of [the C]hildren.

At a point in the case where extraordinary effort by the parents was crucial, both individuals seemed to deteriorate and have themselves returned the case to the original need for placement. . . .

Orphans' Court Opinion, 11/21/19, at 18.[5]  Based upon our review of the record, including the notes of testimony from the termination proceeding and

_____

[5] At the conclusion of the evidence, the orphans' court inquired about the positions of the GAL and legal counsel for W.S., Jr., and N.S. They responded as follows:

[GAL]: [A]t this point all four children are indicating that they would like this to end and for them to be adopted. The two youngest children have really not wavered. That's why I didn't request legal counsel for them.

But since even requesting legal counsel for [W.S., Jr., and N.S.], they have changed their position.

THE COURT: Do you have any concerns these four children are not placed together?

[GAL]: [T]he two families have a very good relationship. And my understanding is they see each other quite a bit outside of -- I know the season for visits. . . .  [M]y understanding [is] there's

- 16 -

the bonding evaluation, we discern no abuse of discretion by the court in concluding that the Children's developmental, physical, and emotional needs and welfare are served by involuntarily terminating Father's parental rights.

Moreover, our independent review of the certified record reveals no preserved, non-frivolous issue that would arguably support this appeal. Therefore, we grant Counsel's petition to withdraw, and affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Counsel's petition to withdraw granted. Decrees affirmed.

---

not going to be any issue of them maintaining contact with each other.

THE COURT: [Legal counsel for W.S., Jr., and N.S.]?

[LEGAL COUNSEL]: That is my understanding too, Your Honor. I did meet with [W.S., Jr., and N.S.] at the school as well as in the foster home. And they're looking forward to the [c]ourt making a final decision for them so they can move forward. They've actually made the comment to me they would like to be adopted[,] and stay where they are. They are safe in that home. They are sad that mom and dad have not been able to do what was needed to be done for them, but they indicated too they do see [their] younger two siblings[,] and they enjoy those visits.

N.T., 10/28/19, at 25-26.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/22/2020</u>